IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. _____ |
| v. | ) ) | COMPLAINT |
| PRESTIGE TRANSPORTATION SERVICE, LLC, | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of race (black), protected activity, and recordkeeping violations, and to provide appropriate relief to Ruth Motte ("Ms. Motte"), Rosemonde Jeanpaul ("Ms. Jeanpaul"), Reinaldo Piña ("Mr. Piña") and a class of black applicants for employment who were adversely affected by such practices.

The United States Equal Employment Opportunity Commission ("EEOC") alleges that Prestige Transportation Service, LLC ("Defendant"), and/or its predecessor company Airbus Alliance, Inc. ("Airbus") (collectively referred to as "Prestige"), discriminated against Ms. Motte by terminating her employment in retaliation for her continued objections to Prestige's discriminatory practices against black employees and applicants for employment.

The EEOC further alleges that Prestige discriminated against Ms. Jeanpaul by subjecting her to different terms and conditions of employment on the basis of her race (black), and by terminating her in retaliation for filing a charge of discrimination with the EEOC.

The EEOC further alleges that Prestige discriminated against Mr. Piña by terminating his employment in retaliation for his opposition to, and reluctance to participate in, Prestige's response to Ms. Jeanpaul's charge of discrimination.

The EEOC further alleges that, since at least 2008, Prestige engaged in an ongoing pattern or practice of race discrimination against black applicants for employment.

Finally, EEOC alleges that Prestige has failed to make and preserve records relevant to the determination of whether unlawful employment practices have been or are being committed.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), Section 707 of Title VII, 42 U.S.C. § 2000e-6, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

## PARTIES

3. The EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 707 of Title VII, 42 U.S.C. § 2000e-6.

4. Defendant is a transportation company that primarily transports crewmembers of airlines between airports and their hotels.  At all relevant times, Defendant has continuously done business in Miami, Florida, and has continuously had at least fifteen employees.

5.       At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6.       Defendant is a successor corporation of Airbus.  Defendant's owner had notice of the charges of discrimination against Airbus, Airbus was able to provide the relief requested in this Complaint, and Defendant has continued the business operations of Airbus.  More specifically, Defendant provides the same services as Airbus, employs many of the same supervisory personnel, dispatchers and drivers as Airbus, operated under the same Passenger Motor Carrier Certificate as Airbus, and uses many of the same vehicles as Airbus.

## ADMINISTRATIVE PROCEEDINGS

7.       More than thirty days prior to the institution of this lawsuit, Ms. Motte, Ms. Jeanpaul, and Mr. Piña filed charges of discrimination with the Commission alleging violations of Title VII by Prestige.  All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

### Ruth Motte

8.       Ms. Motte began working for Prestige (or a predecessor company) in November 2005. Ms. Motte worked in several different capacities for Prestige, but eventually became the Human Resources Manager.

9.       Ms. Motte witnessed Prestige's managers, Teresa Ramirez ("Ms. Ramirez"), Wilda Rodriguez ("Ms. Rodriguez"), and/or Victor Cabrera ("Mr. Cabrera"), engage in numerous unlawful employment practices, and she told them many times that they were breaking the law.

10.      For example, from on or about 2008 through November 2010 when Ms. Mott was terminated, on multiple occasions when a black person applied for employment, Ms. Ramirez

3

and Ms. Rodriguez would stand behind the applicant and rub their hands on their skin to display their disdain for black people. In addition, Ms. Ramirez told Ms. Motte that black people were trouble and would sue the company, and that they should not be hired.

11. Indeed, when black persons came to Airbus looking for a job, Ms. Ramirez, Ms. Rodriguez, and/or Mr. Cabrera told Ms. Motte not to give the person an application. Ms. Ramirez said that do so would be a "waste of paper," and she instructed Ms. Motte to tell black applicants that Prestige was not hiring.

12. Ms. Motte objected to Prestige that it was wrong not to give a person an application simply because the person was black, and she gave applications to black applicants anyway. After black applicants completed their applications and left, Ms. Ramirez, Ms. Rodriguez, and/or Mr. Cabrera told Ms. Motte to throw the applications away. If one of these three managers was present, Ms. Motte would throw the application away in accordance with her supervisors' instructions. Otherwise, she would keep the applications in her desk drawer.

13. When Ms. Motte told Ms. Ramirez and Ms. Rodriguez that they were engaging in discriminatory practices, they would get upset with her, and told her "don't worry about it," "it's not your business," or "stay out of it."

14. Ms. Motte also spoke to Ms. Ramirez and Ms. Rodriguez about their poor treatment of black employee, Rosemonde Jeanpaul. Again however, rather than respond to the issues raised by their Human Resources Manager, Ms. Ramirez and Ms. Rodriguez became upset, and stated that they needed to get Ms. Jeanpaul "out of here."

15. Approximately one week before her termination, Ms. Motte again told Ms. Ramirez and Ms. Rodriguez that Prestige was engaging in discriminatory behavior by failing to accept applications from black applicants. Thereafter, in retaliation for her ongoing opposition to

Prestige's treatment of black employees and black applicants, Prestige terminated Ms. Motte on November 10, 2010.

16. As a direct and proximate result of Prestige's unlawful conduct, Ms. Motte suffered damages including degradation, humiliation, mental anguish, emotional distress, loss of the capacity for the enjoyment of life, and loss of earnings.

### Rosemonde Jeanpaul

17. Ms. Jeanpaul began working for Prestige on July 9, 2007, as a driver.

18. During her employment, Ms. Ramirez and Ms. Rodriguez often refused to speak to Ms. Jeanpaul, and they conducted meetings in Spanish that she could not understand. In addition, Ms. Ramirez and Ms. Rodriguez called her "el mono," which is Spanish for "the monkey."

19. Beginning in approximately February of 2010, dispatcher Eduardo Toledo ("Mr. Toledo") began to send Ms. Jeanpaul home early while allowing Hispanic employees to continue to work and to receive overtime. More specifically, Mr. Toldedo asked Ms. Jeanpaul to leave approximately an hour early three or four days each week. Ms. Jeanpaul was given no explanation as to why she was asked to leave early, whereas Hispanic drivers often worked up to 12 hours each day and were given overtime.

20. Ms. Jeanpaul complained to Ms. Rodriguez about being sent home early on several occasions during August and September of 2010. Ms. Jeanpaul also complained on several occasions to Ms. Motte about the reduced hours and poor treatment. Ms. Ramirez and Ms. Rodriguez refused to rectify the situation, and Ms. Jeanpaul continued to receive reduced hours as compared to Hispanic drivers.

21. Ms. Jeanpaul filed a charge of discrimination with the EEOC complaining of the racially discriminatory treatment she had been subjected to by Ms. Ramirez and Ms. Rodriguez and the

reduced hours on November 23, 2010.  Thereafter, Prestige received notice of the charge of discrimination.

22.     Prestige terminated Ms. Jeanpaul on February 23, 2011, in retaliation for filing her charge of discrimination.

23.     As a direct and proximate result of Prestige's unlawful conduct, Ms. Jeanpaul suffered damages including degradation, humiliation, mental anguish, emotional distress, loss of the capacity for the enjoyment of life, and loss of earnings.

### Reinaldo Piña

24.     Prestige hired Mr. Piña on December 2, 2008.  Mr. Piña worked for Prestige in several different capacities, most recently as a driver.

25.     During his employment, Mr. Piña objected to several of Prestige's unlawful employment practices, including its failure to hire black applicants.

26.     In approximately December 2010, Prestige's managers asked their employees to sign a statement denying that Ms. Jeanpaul was discriminated against for purposes of defending against Ms. Jeanpaul's EEOC charge of discrimination.  Mr. Piña initially declined to sign the statement. In fact, when he was called to Ms. Rodriguez's office and asked to sign, he pretended to sign the statement and then left.  Thereafter, he was called back to the office with Mr. Cabrera and told that he needed to sign the statement.  Mr. Piña felt intimidated by Mr. Cabrera, and as such, he signed the statement.

27.     On March 6, 2011, Prestige laid off Mr. Piña in retaliation for his opposition to, and reluctance to participate in, Prestige's response in defense to Ms. Jeanpaul's charge of discrimination.

28. As a direct and proximate result of Prestige's unlawful conduct, Mr. Piña suffered damages including degradation, humiliation, mental anguish, emotional distress, loss of the capacity for the enjoyment of life, and loss of earnings.

## Black Applicants for Employment

29. Prestige sought and received applications for employment for driver and dispatcher positions since at least 2008 to the present.

30. During that time period, non-Hispanic black applicants applied and/or attempted to apply for the driver and/or dispatcher positions.

31. However, during that time period, Prestige had a practice of (i) refusing to accept applications from non-Hispanic black applicants; (ii) throwing away applications from non-Hispanic black applicants; and/or (iii) failing to consider non-Hispanic black applicants for employment.

32. Prestige did not hire non-Hispanic black applicants to fill vacant driver and/or dispatcher positions from at least 2008-2010. Prestige may have continued to refuse to hire non-Hispanic black applicants after 2010.

33. As a result of its discriminatory hiring practices, Prestige has maintained a workforce that under-represents non-Hispanic black persons in the driver and/or dispatcher positions since at least 2008.

## Recordkeeping

34. Since at least 2008, Prestige failed to accept and/or maintain the applications of black applicants for a period of one year from the date they were created.

35. Since at least 2008, Prestige failed to maintain personnel and other employment records for a period of one year from the date they were created, including but not limited to personnel files and documents regarding rates of pay and other terms of compensation.

36. Following receipt of the charges of discrimination from Ms. Motte, Ms. Jeanpaul, and Mr. Piña, Prestige failed to maintain all records relevant to the charge or action.

## STATEMENT OF CLAIMS

37. Paragraphs 1 through 36 are incorporated herein. Since at least 2008, Prestige has subjected a class of black applicants to an ongoing pattern and practice of discriminatory failure to hire such persons because of their race (black) in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2. In this regard, Prestige has used, and continues to use, race as a criterion for hiring, the effect of which has been to discriminate against black persons for driver and/or dispatcher positions, to deprive black persons of equal employment opportunities, and to otherwise adversely affect their status as applicants because of their race.

38. Paragraphs 1 through 36 are incorporated herein. Prestige has engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by retaliating against Ms. Motte for her protected activities, including but not limited to terminating her employment.

39. Paragraphs 1 through 36 are incorporated herein. Prestige has engaged in unlawful employment practices in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2 and Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by subjecting Ms. Jeanpaul to different terms and conditions of employment on the basis of race (black) and by retaliating against her for her protected activities, including but not limited to terminating her employment.

40.     Paragraphs 1 through 36 are incorporated herein.  Prestige has engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by retaliating against Mr. Piña for his protected activities, including but not limited to terminating his employment.

41.     The effect of the practices complained of in paragraphs 1 through 36 herein has been to deprive Ms. Motte, Ms. Jeanpaul, and Mr. Piña of equal employment opportunities and to otherwise adversely affect their status as employees because of their race and/or because they engaged in protected activity.

42.     Paragraphs 1 through 36 are incorporated herein.  Since at least 2008, Prestige has failed, in violation of Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c), to make and preserve records relevant to the determination of whether unlawful employment practices have been or are being committed.

43.     The unlawful employment practices complained of in paragraphs 1 to 36 were intentionally done with malice and/or reckless indifference to the federally protected rights of Ms. Motte, Ms. Jeanpaul, Mr. Piña, and non-Hispanic black applicants for driver and/or dispatcher positions at Prestige.

### PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with them, from engaging in employment practices which discriminate on the basis of race (black) by subjecting black employees to different terms and conditions of employment and/or by rejecting applicants on the basis of their race (black) for driver and/or dispatcher positions.

B.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with them, from retaliating against employees for engaging in conduct protected by Section 704(a) of Title VII, including but not limited to filing charges of discrimination, objecting to unlawful employment practices, and/or declining to participate in a response to an EEOC charge of discrimination.

C.     Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for black employees and applicants, and which eradicate the effects of its past and present unlawful employment practices.

D.     Order Defendant to make whole Ms. Motte, Ms. Jeanpaul, Mr. Piña, and a class of unsuccessful black applicants, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Ms. Motte, Ms. Jeanpaul, and Mr. Piña, or front pay in lieu thereof, and hiring of black applicants for the positions of driver and/or dispatcher.

E.     Order Defendant to make and preserve all records, in accordance with the provisions of Section 709(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-8(c), relevant to the determination of whether unlawful employment practices have been or are being committed.

F.     Order Defendant to make whole Ms. Motte, Ms. Jeanpaul, Mr. Piña, and a class of unsuccessful black applicants, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 1 through 36 above,

including but not limited to relocation expenses, job search expenses, and/or medical expenses, in amounts to be determined at trial.

G. Order Defendant to make whole Ms. Motte, Ms. Jeanpaul, Mr. Piña, and a class of unsuccessful black applicants by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 1 through 36 above, including but not limited to emotional and physical pain, suffering and mental anguish, humiliation, and loss of the capacity for the enjoyment of life, in amounts to be determined at trial.

H. Order Defendant to pay Ms. Motte, Ms. Jeanpaul, Mr. Piña, and a class of unsuccessful black applicants punitive damages for its malicious and reckless conduct described in paragraphs 1 through 36 above, in amounts to be determined at trial.

I. Grant such further relief as the Court deems necessary and proper in the public interest.

J. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ROBERT WEISBERG
Regional Attorney

KIMBERLY MCCOY-CRUZ
Supervisory Trial Attorney

11

                                              s/ Kristen Foslid
                                              KRISTEN M. FOSLID
Senior Trial Attorney
Florida Bar No. 0688681
Equal Employment Opportunity Commission
Miami District Office
Miami Tower
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: 305.808.1803
Fax: 305.808.1835
kristen.foslid@eeoc.gov